UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OSCAR MINAYA,

                           Movant,

            -v.-

UNITED STATES OF AMERICA,

                           Respondent.

22 Civ. 6338 (KPF)

11 Cr. 755-5 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

The Court resolves several outstanding motions that were filed by
Movant-Defendant Oscar Minaya before the transfer of these cases from United
States District Judge John F. Keenan.  The underlying criminal conduct for
which Mr. Minaya was prosecuted, as well as the extensive procedural history
of the prosecution, are detailed in numerous prior opinions, familiarity with
which is assumed.  *See, e.g.*, *United States* v. *Minaya*, No. 11 Cr. 755-5 (JFK),
2012 WL 1711569 (S.D.N.Y. May 14, 2012) (denying pretrial motions filed by
several co-defendants); *United States* v. *Rodriguez*, No. 11 Cr. 755 (JFK), 2014
WL 715614 (S.D.N.Y. Feb. 24, 2014) (denying motions for judgment of acquittal
and for new trial brought by Mr. Minaya's two co-defendants at trial); *United
States* v. *Rodriguez*, 761 F. App'x 53 (2d Cir.) (summary order) (affirming
conviction), *cert. granted, judgment vacated sub nom. Minaya* v. *United States*,
140 S. Ct. 463 (2019); *United States* v. *Minaya*, 841 F. App'x 301 (2d Cir. 2021)
(summary order) (upholding all but one count of conviction; vacating conviction
on Count Three in light of intervening decision in *United States* v. *Davis*, 588
U.S. 445 (2019); and remanding for plenary resentencing), *cert. denied*, 141 S.

Ct. 2712 (2021); *United States* v. *Minaya,* No. 11 Cr. 755-5 (JFK), 2022 WL 594150 (S.D.N.Y. Feb. 28, 2022) (denying request for appointment of counsel; denying motion pursuant to Fed. R. Crim. P. 37 in favor of motion pursuant to 28 U.S.C. § 2255); *United States* v. *Minaya,* No. 11 Cr. 755-5 (JFK), 2022 WL 3133280 (S.D.N.Y. June 30, 2022) (denying without prejudice motion for extension of time to file Section 2255 motion); *Minaya* v. *United States*, Nos. 22 Civ. 6338 & 11 Cr. 755-5 (JFK), 2022 WL 3084247 (S.D.N.Y. Aug. 3, 2022) (construing *pro se* motion challenging the legality of Mr. Minaya's sentence as a motion brought pursuant to 28 U.S.C. § 2255 and ordering amended motion); *Minaya* v. *United States*, Nos. 22 Civ. 6338 & 11 Cr. 755-5 (KPF), 2022 WL 5135082 (S.D.N.Y. Oct. 5, 2022) (directing the submission of a sworn statement from prior counsel).

Pending before the Court now is Mr. Minaya's amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, as well as several related motions for inspection of grand jury materials and receipt of information concerning the composition of the grand jury. For the reasons set forth in the remainder of this Order, the Court denies Mr. Minaya's motions.

## BACKGROUND

### A.    Factual Background[1]

Mr. Minaya was part of a violent robbery crew that terrorized both drug dealers and legitimate business owners during the approximate time period of

---

[1]    Unless otherwise indicated, references to docket entries are to the docket in Mr. Minaya's criminal case, No. 11 Cr. 755-5 (KPF), and references to page numbers in Mr. Minaya's submissions are to the numbers supplied by this Court's electronic case filing

December 2009 through May 2011. (*See* Revised Final Presentence Investigation Report ("PSR") (Dkt. #477) ¶¶ 1-16, 4-35). In executing the robberies, Mr. Minaya and his confederates would brandish firearms; they frequently physically restrained and assaulted their victims; and, in a gratuitous effort at debasement, they stripped at least one victim naked before releasing him. (*Id.* ¶¶ 47-53). As the Government explained in its opening brief for Mr. Minaya's first appeal:

> The Government's evidence at trial established that Minaya, Hilario-Bello, and Rodriguez were members of a violent kidnapping and robbery crew that committed at least 12 robberies — referred to by the crew as "jobs" — some of which involved the kidnapping of victims and the use of firearms. Through the testimony of 23 witnesses, including five cooperating co-conspirators, the Government showed that the crew's many robberies followed a consistent pattern. First, a member of the crew would receive a tip about the location of drugs or money from an individual — referred to as the "santero" — who was promised a share of whatever the crew managed to steal. Next, the member of the crew who had obtained the tip would put together a team to commit the robbery. The team would prepare by going to the location of the target and conducting surveillance, after which the team would generate a plan for the robbery and assign roles. Finally, the team would carry out the robbery, restraining, threatening, and beating victims as necessary.

---

("ECF") system. For ease of reference, the Court will refer to Mr. Minaya's amended motion pursuant to 28 U.S.C. § 2255 as "Def. 2255 Br." (22 Civ. 6338 Dkt. #4); to his brief in support of his motion for the production of certain grand jury testimony as "Def. GJ Test. Br." (22 Civ. 6338 Dkt. #5); to his affidavit in support of his motion for grand jury testimony as "Def. GJ Test. Aff." (22 Civ. 6338 Dkt. #6); to his brief in support of his motion to dismiss the Indictment as "Def. MTD Br." (22 Civ. 6338 Dkt. #7); to his brief in support of his motion to inspect materials concerning the grand jury's composition as "Def. GJ Comp. Br." (22 Civ. 6338 Dkt. #9); and to the Government's consolidated brief in opposition as "Gov't Opp." (22 Civ. 6338 Dkt. #13).

> In total, the Government presented the jury with
> evidence of twelve distinct jobs committed by the crew[.]

Brief for the United States of America, *United States* v. *Henriquez*, No. 14-882(L), 2015 WL 5608995, at *4 (S.D.N.Y. Sept. 22, 2015).

## B.    Procedural Background

Mr. Minaya was arrested on a criminal complaint on August 23, 2011; the complaint charged him with conspiracy, kidnapping, and firearms offenses, in violation of 18 U.S.C. §§ 371, 1201, and 924(c).  (Dkt. #1).  Three weeks later, on September 15, 2011, Mr. Minaya and six co-defendants were charged in a three-count indictment with these same offenses.  (Dkt. #11).  The matter was initially assigned to Judge Keenan.  On November 29, 2011, the grand jury returned a superseding indictment adding Hobbs Act robbery and robbery conspiracy charges, as well as additional firearms charges.  (Dkt. #22).  And on July 12, 2012, the grand jury returned an additional superseding indictment, adding narcotics conspiracy charges and additional co-defendants.  (Dkt. #52).

In September 2013, Mr. Minaya proceeded to trial before Judge Keenan with two of his codefendants, Jovanny Rodriguez and Jesus Hilario-Bello.  (*See* Minute Entry for September 23, 2013).  Two weeks before trial, the Government obtained one final superseding indictment (the "Indictment"), which charged Mr. Minaya with Hobbs Act conspiracy, in violation of 18 U.S.C. § 1951 (Count One); kidnapping conspiracy, in violation of 18 U.S.C. § 1201(c) (Count Two); use of a firearm in furtherance of the crimes charged in Counts One and Two, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count Three); the substantive offenses of Hobbs Act robbery and kidnapping (Counts Four,

Ten and Thirteen, and Counts Five and Eleven, respectively); additional firearms charges relating to several of the substantive offenses (Counts Six, Twelve, and Fourteen); and conspiracy to distribute and to possess with intent to distribute cocaine, heroin, and marijuana, in violation of 21 U.S.C. § 846 (Count Fifteen).  (Dkt. #146).

Trial began on September 24, 2013, and concluded on October 11, 2013, when the jury, after less than a day of deliberations, convicted Mr. Minaya of all of the counts with which he had been charged.  (Dkt. #163 (verdict form)).  Mr. Minaya was initially sentenced on February 24, 2014.  (Dkt. #282 (transcript), 303 (judgment)).  After hearing from the parties and announcing that he was "not a big fan and never have been of mandatory minimums" (Dkt. #282 at 3), Judge Keenan imposed the aggregate mandatory minimum term of 92 years' imprisonment (*id.* at 21), but withheld filing the judgment for 90 days to see if Congress would act on then-pending sentencing legislation (*id.*).  Judgment was ultimately entered on May 27, 2014.  (Dkt. #303).

Mr. Minaya filed a notice of appeal on May 27, 2014 (Dkt. #305), and his appeal was consolidated with those of several of his co-defendants.  *See generally United States* v. *Henriquez (Minaya)*, No. 14-1891(L) (2d Cir.).  At the request of Mr. Minaya and his co-appellants, the Second Circuit held the case in abeyance pending the resolution of two other appeals, *United States* v. *Hill*, No. 14-3872, and *United States* v. *Barrett*, No. 14-2641.  Thereafter, in a summary order issued on February 5, 2019, the Second Circuit, in relevant part, upheld Mr. Minaya's convictions and sentence against arguments of

flawed jury instructions, erroneous evidentiary decisions, and putative misconduct by the Government. *United States* v. *Rodriguez*, 761 F. App'x 53, 59-63 (2d Cir. 2019) (summary order). Shortly after that decision, the Supreme Court decided *United States* v. *Davis*, 588 U.S. 445 (2019), which invalidated the residual clause of the "crime of violence" definition contained in 18 U.S.C. § 924(c). Mr. Minaya petitioned for certiorari, and, on November 4, 2019, the Supreme Court granted his petition, vacated the Second Circuit's judgment, and remanded the case back to the appellate court for further consideration in light of *Davis*. *See Minaya* v. *United States*, No. 19-5308, 140 S. Ct. 463 (2019).

On remand, the Second Circuit sought "supplemental briefing addressing the effect of *Davis* on this Court's prior decision that Hobbs Act conspiracy is categorically a crime of violence ... and on the question whether kidnapping conspiracy in violation of 18 U.S.C. § 1201(c) is a crime of violence, for purposes of § 924(c)(3)(A)." *United States* v. *Minaya*, 841 F. App'x 301, 302 (2d Cir. 2021) (summary order). With the Government's consent, the Second Circuit vacated Mr. Minaya's conviction on Count Three; it affirmed the other counts of conviction that were potentially affected by *Davis*, namely, Counts Six, Twelve, and Fourteen; and it remanded the matter back to Judge Keenan for plenary resentencing. *Id.* at 306. Mr. Minaya again petitioned for certiorari, but this time his petition was denied. *Minaya* v. *United States*, 141 S. Ct. 2712 (2021).

6

After obtaining a revised Presentence Investigation Report (Dkt. #477), and updated submissions from the parties (Dkt. #478, 481, 484, 486, 487), Judge Keenan resentenced Mr. Minaya on June 23, 2021. (Dkt. #489 (amended judgment), 496 (transcript)). Judge Keenan began by resolving a legal dispute between the parties concerning the applicability of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, to Mr. Minaya's Section 924(c) convictions, ultimately concluding that the Act — and, more particularly, its anti-stacking provisions — would apply. (Dkt. #496 at 17-20). Having resolved that issue in Mr. Minaya's favor, Judge Keenan proceeded to consider the defense's request that it sentence Mr. Minaya to the now-applicable mandatory minimum term of 31 years' imprisonment. Judge Keenan demurred, recalling that

> the crimes here were some of the worst crimes that I have even ever sentenced for or ever prosecuted when I was a prosecutor or ever defended when I was a defense lawyer for a short while. I mean, the criminal activity here was practically inhuman, some of it, and I just think the record has to reflect that.

(*Id.* at 7). Instead, Judge Keenan imposed an aggregate term of 47 years' imprisonment. (*Id.* at 21-22). Mr. Minaya did not appeal from this sentence.

## C.    The Instant Motions

On October 7, 2021, Mr. Minaya filed a motion for relief pending appeal, pursuant to Federal Rule of Criminal Procedure 37(a)(3). (Dkt. #502). There being no appeal at the time, Judge Keenan denied the motion as moot, and instead directed Mr. Minaya to file a motion pursuant to 28 U.S.C. § 2255 if he wanted to collaterally attack his conviction. *United States* v. *Minaya*, No. 11

Cr. 755-5 (JFK), 2022 WL 594150, at *1 (S.D.N.Y. Feb. 28, 2022).  (*See also*

Dkt. #514 (noting Mr. Minaya's request to withdraw his Rule 37 motion in favor

of a Section 2255 motion)).  On July 25, 2022, the Court received and docketed

Mr. Minaya's Section 2255 motion.[2]  After reviewing the motion papers, Judge

Keenan issued an order to amend (Dkt. #539), and Mr. Minaya filed his

amended motion on September 27, 2022 (Dkt. #545; 22 Civ. 6338 Dkt. #4).  At

or about the same time, the matter was reassigned to the undersigned.  (Dkt.

#544).

Upon receipt of Mr. Minaya's amended motion papers, which included

claims of ineffective assistance, this Court issued an order seeking

confirmation that Mr. Minaya wished to waive the attorney-client privilege and,

if so, a sworn statement from one of Mr. Minaya's prior counsel, Andrew St.

Laurent.  (Dkt. #546).[3]  Mr. Minaya executed the waiver form on October 20,

2022 (Dkt. #549), and Mr. St. Laurent submitted a declaration with several

exhibits on November 16, 2022 (Dkt. #551).  The Government's opposition

submission was filed on December 28, 2022.  (Dkt. #552).  Mr. Minaya was

---

[2]    Mr. Minaya had asked Judge Keenan for a 90-day extension to file his motion, which motion was denied because the Court "lack[ed] jurisdiction to consider the timeliness of a § 2255 petition until a petition is actually filed."  *United States* v. *Minaya*, No. 11 Cr. 755-5 (JFK), 2022 WL 3133280, at *2 (S.D.N.Y. June 30, 2022) (quoting *United States* v. *Leon*, 203 F.3d 162, 164 (2d Cir. 2000)).  As it happened, Mr. Minaya's motion was filed a few days after the one-year deadline, and he explained that the delay was caused in part by a lockdown at his facility.  (Def. 2255 Br. 8-10).  The Government has agreed on this record not to assert a defense based on the statute of limitations.  (Gov't Opp. 12).

[3]    Mr. Minaya's trial counsel, Martin Geduldig, passed away in 2020.  (*See* Gov't Opp. 8 n.5).

given an opportunity to file a reply submission, but has not done so to date. (Dkt. #567).

Certain of Mr. Minaya's submissions were filed in both the civil and criminal cases; others were filed only in the civil case. The amended Section 2255 motion filed in the criminal case is styled only as a motion for the production of grand jury testimony. (Dkt. #545). The civil docket includes the complete amended Section 2255 motion (22 Civ. 6338 Dkt. #4), as well as motions for production of grand jury testimony (22 Civ. 6338 Dkt. #5 (brief), 6 (affidavit)), to dismiss the operative Indictment against him (22 Civ. 6338 Dkt. #7 (brief), 8 (reserving rights)), and to inspect the list of grand jurors empaneled at the time the Indictment was returned (22 Civ. 6338 Dkt. #9 (brief)). Construing these materials broadly "to raise the strongest arguments that they suggest," *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (internal quotation marks and citation omitted), the Court discerns the following claims for relief:

- "Ground One" concerns Mr. Minaya's claim that New York City Police Department ("NYPD") Detective Donald DeRienzo made deliberately false statements in the complaint on which Mr. Minaya was initially arrested, and then repeated those false statements to the grand jury and at trial. A corollary to Ground One is Mr. Minaya's claim that his trial counsel, Martin Geduldig, provided ineffective assistance of counsel in failing to perceive the falsity of these statements and in not moving earlier to dismiss the Indictment.

- "Ground Two" concerns Mr. Minaya's claim that the grand jurors who voted to indict him did not reflect a fair cross-section of the community, and thus that the return of the Indictment violated his statutory and constitutional rights. Again, a corollary to this claim is

a claim of ineffective assistance on the part of Mr. Geduldig for not moving to dismiss the Indictment on this basis.

- ▪ "Ground Three" concerns Mr. Minaya's claims that his counsel on appeal and resentencing, Andrew St. Laurent, provided ineffective assistance in failing to communicate to him several plea offers made by the Government after the matter was remanded for resentencing, and in failing to file a notice of appeal from that resentencing after Mr. Minaya requested that he do so.

- ▪ "Ground Four" concerns Mr. Minaya's wish to preserve his ability to assert an argument under the Supreme Court's decision in *United States* v. *Taylor*, 596 U.S. 845 (2022).

In the remainder of this Opinion, the Court resolves Mr. Minaya's claims for relief.

## DISCUSSION

### A.   Applicable Law

#### 1.   Motions Under 28 U.S.C. § 2255[4]

A prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the [trial] court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]"  28 U.S.C. § 2255(a).  However, the grounds for such a collateral attack under Section 2255 are much more limited than those available on a direct appeal.

---

[4]    Motions filed pursuant to 28 U.S.C. § 2255 are sometimes referred to as federal habeas petitions.  As a result, courts use the terms "movant," "petitioner," and "defendant" interchangeably.

*See United States* v. *Addonizio*, 442 U.S. 178, 185 (1979).  Relief may lie "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States* v. *Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill* v. *United States*, 368 U.S. 424, 428 (1962)); *accord Cuoco* v. *United States*, 208 F.3d 27, 30 (2d Cir. 2000).

"It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'"  *United States* v. *Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (quoting *Cabrera* v. *United States*, 972 F.2d 23, 25 (2d Cir. 1992)); *accord United States* v. *Natelli*, 553 F.2d 5, 7 (2d Cir. 1977) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack[.]").  The sole exception is when "there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal."  *Chin* v. *United States*, 622 F.2d 1090, 1092 (2d Cir. 1980).  Section 2255 also precludes a defendant from bringing claims for the first time that could have been raised on direct appeal. *See Bousley* v. *United States*, 523 U.S. 614, 622-23 (1998).  Where the petitioner has procedurally defaulted on a claim by failing to raise it on direct appeal, the claim may be raised pursuant to Section 2255 only if the petitioner can demonstrate (i) cause for the failure to raise the claim and prejudice from the alleged error, or (ii) actual innocence of the crime.  *Id.*; *see also Murray* v. *Carrier*, 477 U.S. 478 (1986).

Generally speaking, a Section 2255 motion requires a hearing unless files and records conclusively show that the movant is entitled to no relief.  *See* 28 U.S.C. § 2255(b); *see also Pham* v. *United States*, 317 F.3d 178, 184 (2d Cir. 2003).  That said, the filing of a Section 2255 motion does not automatically entitle the movant to a hearing, as, for example, in instances in which a movant's allegations are "vague, conclusory, or palpably incredible." *Machibroda* v. *United States*, 368 U.S. 487, 495 (1962).  Rather, it is within the district court's discretion to determine the scope and nature of a hearing. *Chang* v. *United States*, 250 F.3d 79, 85-86 (2d Cir. 2001) ("It was, therefore, within the district court's discretion to choose a middle road [requiring a detailed affidavit from counsel] that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing."); *cf. Thomas* v. *United States*, 93 F.4th 62, 66 (2d Cir. 2024) ("In many cases, the district court may discharge this obligation by accepting affidavits from the defendant's prior counsel, including those filed as part of the government's opposition papers.").

## 2.    Ineffectiveness Claims on Collateral Review

In order to succeed on a claim of ineffective assistance of counsel, a movant must meet the two-pronged test established by *Strickland* v. *Washington*, 466 U.S. 668 (1984).  *First*, the movant must show that his counsel's representation was deficient, falling below the objective standard of reasonableness.  *See id.* at 687-88.  During this first step, the standard of

review is highly deferential and includes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "This presumption is overcome only if counsel failed to act reasonably considering all of the circumstances." *United States* v. *Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020).

*Second*, the movant must establish that his counsel's errors resulted in actual prejudice. *See Strickland*, 466 U.S. at 694. A movant satisfies this second prong by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*; *see also United States* v. *Nolan*, 956 F.3d 71, 79 (2d Cir. 2020). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Garner* v. *Lee*, 908 F.3d 845, 862 (2d Cir. 2018).

A court is not required to address *Strickland*'s elements in any particular order. *See Strickland*, 466 U.S. at 697. If the movant does not successfully establish either the performance prong or the prejudice prong, the entire claim fails, and the remaining, unaddressed step becomes moot. *See id.*

**B.    Analysis**

### 1.    Detective DeRienzo's Testimony Does Not Provide a Basis for Relief

The Court begins with Mr. Minaya's proffered "Ground One." (Def. 2255 Br. 15-51). In brief, Mr. Minaya contends that Detective DeRienzo made false statements under oath in his criminal complaint, to the effect that he had shown one of the victims ("Victim-1") two photo arrays, from which Victim-1 had identified two of Mr. Minaya's co-defendants, Juan Marte and Jose Ortega.

(*Id.* at 16).  At one point, Mr. Minaya claimed that there was only one photo
array.  (*Id.*).  Later on in his submission, however, Mr. Minaya contended that
Detective DeRienzo made up the whole event.  What is more, he claimed that
Detective DeRienzo repeated these statements at trial, but that Victim-1, who
also testified at trial, stated that he had not been shown any photo arrays by
law enforcement.  (*Id.* at 20-22).  Mr. Minaya argues that Detective DeRienzo's
successful submission of false statements to this Court had both short- and
long-term effects: they influenced the duty Magistrate Judge's decision on the
issue of probable cause, and they emboldened Detective DeRienzo to lie to "a
Prosecutor, the Court, the Grand Jury, and also to Petit Jurors at trial."  (*Id.* at
17).

Several corollary arguments proceed from this premise.  *First*, Mr.
Minaya moves for access to the transcript of Detective DeRienzo's testimony
before the grand jury, so that he can determine whether other testimony is
false or misleading.  (Def. 2255 Br. 5; Def. GJ Test. Br. 1-6; Def. GJ Test. Aff.;
Def. MTD Br.).  *Second*, Mr. Minaya argues that his trial counsel, Mr. Geduldig,
failed to pick up on Detective DeRienzo's perjury, and thus provided ineffective
assistance in failing to file a motion to dismiss the Indictment based on the
false statements, or a motion for a new trial.  (Def. 2255 Br. 44-48).

As an initial matter, any arguments regarding Detective DeRienzo's
testimony could have been raised on direct appeal, and would therefore seem

to be procedurally barred.  *See Bousley*, 523 U.S. at 622-23.[5]  Similarly, it is

not at all clear to the Court that Detective DeRienzo perjured himself in the

complaint, in the grand jury, or at trial.  As the Government notes, the

questions to Victim-1 about whether the Government had shown him

photographs of Mr. Minaya or his confederates occurred in a portion of the

witness's cross-examination concerning his preparation for his trial testimony;

the witness could simply have been confused about the relevant time frame.

(*See* Trial Transcript ("Tr.") 64-68).[6]  Moreover, neither of the individuals

purportedly identified in the photo arrays was Mr. Minaya, so there was no

danger of misidentification or misattribution of conduct to Mr. Minaya.[7]

Indeed, to the extent that the testimony of Detective DeRienzo and Victim-1

was in conflict, the jurors saw that conflict in real time and still voted to

convict Mr. Minaya.  And that is because the Government's abundant evidence

of his guilt included, as mentioned, 23 witnesses, five of whom were

cooperating co-conspirators.

---

[5]     Mr. Minaya suggests that he was not aware of Detective DeRienzo's grand jury
testimony because Mr. Geduldig had entered into a stipulation barring Mr. Minaya from
receiving a copy of the material the Government produced pursuant to 18 U.S.C.
§ 3500.  (Def. 2255 Br. 44-45).  Even if that were true, it would not provide cause for
Mr. Minaya's procedural default.  Mr. Minaya attended his own trial, and heard for
himself the ostensibly conflicting testimony from Detective DeRienzo and Victim-1.

[6]     The Court understands Mr. Minaya's Ground One argument to be that Detective
DeRienzo made false statements, and not that Victim-1 made false statements.

[7]     To the extent Mr. Minaya faults Mr. Geduldig for not challenging any discrepancy in
testimony more aggressively, *e.g.*, with additional cross-examination or a motion for an
adverse inference, such choices were strategic decisions that cannot support an
ineffectiveness claim on these facts.  The Second Circuit has made clear that
"[d]ecisions about 'whether to engage in cross-examination, and if so to what extent and
in what manner, are ... strategic in nature' and generally will not support an ineffective
assistance claim."  *Dunham* v. *Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quoting *United
States* v. *Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)).

As it happens, Mr. Minaya is not breaking new ground with his claims of false statements by Detective DeRienzo. To the contrary, his arguments replicate those originally raised by co-defendant Jovanny Rodriguez in 2018, and then renewed by Mr. Rodriguez in 2020 and 2021. (*See* Dkt. #392, 450, 474). Judge Keenan rejected Mr. Rodriguez's arguments in an Opinion and Order dated July 18, 2022, and this Court sees no basis to depart from Judge Keenan's thoughtful analysis. *See United States* v. *Rodriguez*, No. 11 Cr. 755-3 (JFK), 2022 WL 2805536 (S.D.N.Y. July 18, 2022), *motion for relief from judgment denied*, No. 11 Cr. 755-3 (KPF), 2024 WL 3966700 (S.D.N.Y. Aug. 28, 2024).

For the reasons stated above, the Court rejects Mr. Minaya's argument that he was convicted based on perjured testimony. However, his related arguments were considered, and rejected, by Judge Keenan in an analysis that this Court incorporates by reference. In suggesting that defense counsel for Mr. Rodriguez was ineffective in failing to move to dismiss the Indictment, for example, Judge Keenan observed that

> [The defendant's] ineffective assistance claim fails because the contemplated motion to dismiss the indictment would have been denied as meritless. As an initial matter, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States* v. *Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotations omitted) (citing *United States* v. *Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)). The various Counts in [the defendant's] Indictment, including the Counts related to the May 15, 2011, kidnapping of [Victim-1], tracked the language of the relevant statutes and identified the time and place

of the charged criminal acts.  Furthermore, even if the record supported [the defendant's] claim that DeRienzo's testimony was false, which it does not, dismissal on that basis alone would not have been warranted.  [The defendant] offers no evidence that DeRienzo's testimony in a grand jury proceeding relating to the indictment of Ortega and Marte "substantially influenced the grand jury's" subsequent decision to indict him.  [*Bank of Nova Scotia* v. *United States*, 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988)].  Moreover, [the defendant] has failed to identify any other alleged prosecutorial misconduct that would "raise a substantial and serious question about the fundamental fairness" of the grand jury proceeding that resulted in his indictment.  *Id.* at 259, 108 S.Ct. 2369; *see also United States* v. *Jones*, 164 F.3d 620, 1998 WL 708952, at *2 (2d Cir. 1998) (Table Decision) ("[A] defendant's complaint that a government agent gave the grand jury misleading testimony — including an inaccurate summary of evidence — is in essence a challenge to the reliability or competence of the evidence and, absent other prosecutorial misconduct, will not support dismissal of an indictment.").  Accordingly, because the Court would have denied the contemplated motion as meritless, [defense counsel's] failure to file the motion did not fall below an "objective standard of reasonableness."  *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052; *see also United States* v. *Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance"), *cert. denied*, 516 U.S. 927, 116 S.Ct. 330, 133 L.Ed.2d 230 (1995)

*Rodriguez*, 2022 WL 2805536, at *5.

For similar reasons, Judge Keenan rejected an argument that Mr. Rodriguez's defense counsel had been ineffective in failure to investigate the conflict in testimony, reasoning that

[Victim-1's] identification of Ortega and Marte had little impact on the outcome of [the defendant's] defense.  The Government presented overwhelming evidence, including in the form of eye-witness testimony, of [the defendant's] participation in the twelve robberies

> charged in the Indictment.…    Accordingly, even if [defense counsel] had sought an adjournment, the outcome of the trial would have remained the same.

*Rodriguez*, 2022 WL 2805536, at *6.  These conclusions apply equally to Mr. Minaya's arguments.

In sum, Mr. Minaya has failed to show that he was denied a fair trial; that he was improperly convicted; or that he received the ineffective assistance of counsel based on the challenged testimony of Detective DeRienzo. Accordingly, the Court denies Mr. Minaya's motion to the extent it is predicated on his Ground One claims.

### 2.    Mr. Minaya Has Not Raised a Viable Claim Concerning Grand Jury Composition

In "Ground Two" of his motion, Mr. Minaya seeks a hearing to determine whether he "deliberately by-passed" or otherwise waived any constitutional claims he might have had with respect to the composition of the grand jury that returned the Indictment against him.  (Def. 2255 Br. 52).  On this point, Mr. Minaya asserts — without any evidence — that the grand jury selection process for this District discriminates against, and/or results in the systematic exclusion of, Black, Hispanic/Latino, female, and transgender citizens from the jury pool.  (*Id.* at 52-56).  He further explains his failure to raise the matter earlier by faulting his prior counsel, Mr. Geduldig, for neither advising him of his rights nor seeking dismissal of the Indictment.  (*Id.* at 57-64).

Mr. Minaya is correct that the Sixth Amendment guarantees a defendant the right to a jury drawn from a fair cross-section of the community.  *See Taylor* v. *Louisiana*, 419 U.S. 522, 530 (1975).  In *Duren* v. *Missouri*, 439 U.S.

357 (1979), the Supreme Court set forth three elements a criminal defendant must establish to show a *prima facie* violation of the Sixth Amendment's fair cross-section requirement.  Specifically, a defendant must show "[i] that the group alleged to be excluded is a 'distinctive' group in the community; [ii] that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and [iii] that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."  *Id.* at 364.  If a defendant makes this showing, the Government may rebut the *prima facie* case by showing a "significant state interest" justifying the aspect of the jury selection process at issue.  *See id.* at 368.

Mr. Minaya has made no effort to satisfy the second and third elements of the *Duren* test, and his application for relief — as well as his correlative claims of cause (under the "cause and prejudice" standard) and ineffectiveness — can be rejected on this basis.  Recently, however, the Second Circuit considered, and rejected, race-based challenges to this District's jury selection plan under the Sixth Amendment and the Jury Selection and Service Act of 1968 (the "JSSA"), 28 U.S.C. §§ 1861-1878.  *See United States* v. *Slaughter*, 110 F.4th 569 (2d Cir. 2024).[8]  As relevant here, the Court assumed the first two elements of the *Duren* test, but concluded that the defendant had

---

[8]     The jury selection plan at issue in *Slaughter* was the January 29, 2009 Amended Plan for the Random Selection of Grand and Petit Jurors, which the Court understands to be the same plan in place at the time the Indictment was returned in this case.  *United States* v. *Slaughter*, 110 F.4th 569, 575 (2d Cir. 2024).

failed to present evidence of systematic underrepresentation of Black and Hispanic/Latino citizens in grand or petit jury venires.  *Id.* at 584-86.  The holding in *Slaughter* forecloses any challenge by Mr. Minaya to the relevant grand jury venire, and thus the Court denies relief predicated on Mr. Minaya's Ground Two.

### 3.    Mr. Minaya Received the Effective Assistance of Counsel During His Resentencing Proceedings

Mr. Minaya's "Ground Three" claims encompass two challenges to the conduct of Andrew St. Laurent, his counsel on appeal and for his resentencing before Judge Keenan.  In particular, Mr. Minaya claims that Mr. St. Laurent (i) failed to communicate plea offers of 25 years' and 20 years' imprisonment, respectively, that were made by the Government after the case was remanded to Judge Keenan for resentencing, and (ii) failed to file a notice of appeal despite Mr. Minaya's request that he do so.

To review, the Court directed Mr. St. Laurent to file a sworn statement regarding Mr. Minaya's claims after receiving the latter's privilege waiver.  Among other things, Mr. St. Laurent averred that:

- The Government communicated no plea offers to Mr. St. Laurent during the period between the remand and Mr. Minaya's resentencing, and thus none were communicated to Mr. Minaya.  (St. Laurent Decl. ¶¶ 8, 22).[9]

- At the time of Mr. Minaya's resentencing, the Second Circuit had not spoken on the issue of whether the anti-stacking provision of the First Step Act applied to resentencings, where the original sentencing date

---

[9]    The Government has confirmed that no plea offers were extended during this time period.  (Gov't Opp. 20 n.7).

predated the Act. Thus, while Judge Keenan accepted the defense's position at the resentencing, there was no guarantee that the Second Circuit would uphold his decision were the sentence to be appealed by the Government. (*Id.* ¶¶ 23-30).[10]

- As a result of this uncertainty on the law, Mr. St. Laurent advised his client that "while Minaya had some chance of prevailing on appeal of the sentence Judge Keenan had imposed of 47 years, if Minaya filed a notice of appeal, that would considerably increase the chances of the government filing a notice of a cross-appeal, and challenging the application of the First Step Act to Minaya's sentence." (*Id.* ¶ 31). Mr. St. Laurent provided this information in an in-person meeting on July 6, 2021, and then followed it up with a letter containing the same information and a recommendation on July 7, 2021. Mr. St. Laurent emphasized, however, that the decision to appeal was Mr. Minaya's to make. (*Id.* ¶¶ 31-33 & Ex. 1).

- On July 12, 2021, Mr. Minaya advised Mr. St. Laurent that he did not wish to file a notice of appeal. "That same day, undersigned counsel wrote Minaya a letter reflecting that conversation and informing Minaya of the consequences of that decision[.]" (*Id.* ¶ 34 & Ex. 2).

- On August 16, 2021, Mr. St. Laurent wrote to Mr. Minaya to advise him that the Government had not filed a notice of appeal and that "other than through a 2255 petition or compassionate release application, Minaya's sentence had become final[.]" (*Id.* ¶ 36 & Ex. 3).

- At no point did Mr. Minaya ever instruct Mr. St. Laurent to file a notice of appeal. (*Id.* ¶ 38).

It is true that an attorney's failure to communicate a plea offer from the

Government, or to file a notice of appeal when the client requests that counsel

---

[10]    As of the date of this Order, the Second Circuit still has not resolved the issue. *See United States* v. *Barrett*, 102 F.4th 60, 70 (2d Cir. 2024) ("we do not address that question on which this court has yet to rule conclusively").

do so, can amount to ineffective assistance of counsel. *See, e.g.*, *Lafler* v. *Cooper*, 566 U.S. 156, 174 (2012) (failure to relay plea offer); *Missouri* v. *Frye*, 566 U.S. 134, 147 (2012) (same); *Roe* v. *Flores-Ortega*, 528 U.S. 470, 477, 484 (2000) (failure to follow directive to file notice of appeal). The record in this case, however, makes plain that Mr. St. Laurent committed neither of the failures ascribed to him by Mr. Minaya. Accordingly, the Court rejects arguments predicated on Mr. Minaya's Ground Three.

### 4.   Mr. Minaya Has No Argument Under *Taylor*

Finally, Mr. Minaya asserts as "Ground Four" an unspecified claim under the Supreme Court decision in *United States* v. *Taylor*, 596 U.S. 845 (2022), which found, as relevant here, that attempted Hobbs Act robbery did not qualify as a crime of violence for purposes of 18 U.S.C. § 924(c). In particular, Mr. Minaya requests that "in the event that Taylor's case benefit his case," the Court appoint counsel to make such an argument. (Def. 2255 Br. 75). As the Government notes (Gov't Opp. 21), none of the predicate offenses underlying Mr. Minaya's Section 924(c) convictions was an attempt offense; instead, each was a completed substantive offense of Hobbs Act robbery or kidnapping.[11]

---

[11]    *See United States* v. *Rich*, No. 21-3104-cr, 2024 WL 4489599, at *1 (2d Cir. Oct. 15, 2024):

> Rich argues that the Supreme Court's holding in *United States* v. *Taylor*, 596 U.S. 845 (2022), that attempted Hobbs Act robbery is not a valid "crime of violence" predicate extends to substantive Hobbs Act robbery as well. He thus argues that his § 924(c) conviction is invalid. But our Court has already explicitly rejected this argument and concluded that "nothing in *Taylor*'s language or reasoning ... undermines this Court's settled understanding that completed Hobbs Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A)." *United States* v. *McCoy*, 58 F.4th 72, 74 (2d Cir. 2023).

Accordingly, Mr. Minaya can raise no challenge under *Taylor*, and the Court rejects his Ground Four challenge.

## CONCLUSION

For the reasons set forth in this Order, the Court DENIES Mr. Minaya's motions, including his motion pursuant to 28 U.S.C. § 2255, his motions for inspection of grand jury materials and for receipt of information concerning the composition of the grand jury, and his motion to dismiss the Indictment.  The Clerk of Court is directed to terminate the motions pending at docket entries 500, 537, and 545 in Case No. 11 Cr. 755-5 and at docket entries 5 and 9 in Case No. 22 Civ. 6338; to docket this Order in both cases; and to mail a copy of the Order to Mr. Minaya at the following address:

> Oscar Minaya
> Register Number: 65612-054
> FCI Ray Brook
> Federal Correctional Institution
> P.O. Box 900
> Ray Brook, NY  12977

Because Mr. Minaya has not made a substantial showing of the denial of a constitutional right with respect to his motion, the Court will not issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c).  Additionally, the Court finds that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith; *in forma pauperis* status is therefore denied for the purpose of any appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:    October 29, 2024
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge